## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

CHRISTOPHER LEHMAN        :        DOCKET NO. 2:20-cv-00736

VERSUS        :        JUDGE TERRY A. DOUGHTY

HENRY GUINN, ET. AL.        :        MAGISTRATE JUDGE KAY

### REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss filed by the City of Jennings and its officials who were named as defendants, namely Henry Guinn, Bobby Vasseur, Kevin Millican, and Steven VanHook. Doc. 4. Plaintiff Christopher Lehman opposes the motion. Doc. 12. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons stated below, **IT IS RECOMMENDED** that the defendant's Motion to Dismiss be **GRANTED** in part and **DENIED** in part. **IT IS RECOMMENDED** the court **GRANT** defendant's Motion to Dismiss plaintiff's: (1) equal protection claim for race discrimination; (2) substantive due process claim; and (3) first amendment retaliation claim arising from voicing his complaints to the City, as these three claims have prescribed. We **RECOMMEND** the court **DENY** defendant's Motion to Dismiss plaintiff's first amendment retaliation claim arising from his prior lawsuit against the City. Finally, we **RECOMMEND** the court **DENY** defendant's Motion to Dismiss plaintiff's equal protection "class of one" claim until the plaintiff can amend his complaint.

# I.

## BACKGROUND

The plaintiff in this matter, a resident of the City of Jennings ("the City"), filed this suit on June 10, 2020, against the City of Jennings and its officials in their official and individual capacities. Doc. 1. Plaintiff asserted claims under the Equal Protection Clause, the Due Process Clause of the Fourteenth Amendment, and the First Amendment. *Id.* Plaintiff alleges that he owns several properties in Jennings near the intersection of Isabelle Street and Tizeno Alley, and his residence is located at 1010 Isabelle Street. *Id.*, p. 4, ¶ 16-17. Plaintiff's complaint cites a host of City ordinances which he claims the City refuses to enforce in his neighborhood. *Id.*, pp. 6-8, ¶ 32-44. Moreover, he claims that in 2000, the previous owner of the neighboring property received a permit to place a trailer on the property in violation of the City's zoning ordinances precluding use of "mobile homes" and "travel trailers" in plaintiff's neighborhood—a "strictly residential" zone. *Id.*, p. 8, ¶ 45 and n. 3. Plaintiff complains that the trailer has deteriorated and fallen into disrepair since a purported transfer of the neighboring property to Randall and Loretta Miller in 2007. *Id.*, p. 13, ¶ 80-81. Plaintiff further claims the trailer's structure does not conform with a number of the City's zoning ordinances. *Id.*, pp. 12-14, ¶ 77-78, 83-89. Additionally, plaintiff alleges the Miller's property as a whole has become "increasingly unkempt and fell into a continually worsening state of disrepair."[1] *Id.*, p. 13, ¶ 80-81. The plaintiff claims other properties within his neighborhood have similar issues and violate the City's ordinances as well. *Id.*, pp. 14-15, ¶ 90-93. Plaintiff alleges that he has reported general crime and disorder in his neighborhood, as well as instances of harassment directed towards him, that have also gone unaddressed. *Id.*, p. 17, ¶ 109 and p. 20, ¶ 135.

---

[1] Specifically, he alleges the lot is "characterized by its excessive buildup of trash, an overgrowth of fauna, haphazardly and temporarily rigged utility lines, its numerous, abandoned, stripped, or junked motor vehicles[], and its utilization as a perpetual host to two (2) unlicensed mobile trailer campers." Doc. 1, p. 13, ¶ 81.

Despite the City's refusal to address concerns in his own neighborhood, plaintiff claims that the City has approved demolition and cleanup of a home in a "predominately white" neighborhood, with the City citing as justification the negative impact on value of other real estate in the surrounding area. *Id.*, p. 17, ¶ 110-114. Plaintiff alleges that the City has not only failed to address his complaints but has also prevented him from raising these concerns at City Council meetings and refused to assign his complaints official case numbers. *Id.*, pp. 15-17, ¶ 94, 101-108. Plaintiff claims that in August of 2019, he "furnished a letter to City Council and Mayor Guinn detailing the gamut of violations and the City's failure to fulfill its duty to enforce and remedy the same under the applicable ordinances." *Id.*, p. 17, ¶ 115; *see also* att. 30, pp. 1-5. In November 2019, the City responded in a letter "outlining the findings of a third-party inspector and the City's purported enforcement efforts." *Id.*, p. 18, ¶ 116; *see also* att. 17. The City's response indicates that a third-party inspector concluded the Miller structure was a "Cabin" instead of a trailer, therefore complying with local ordinances. *Id.*, att. 17, p. 1. Additionally, the City Inspector inspected the Millers' property and found several violations of local ordinances, subsequently issuing the Millers notice of the violations in September 2019. *Id.*, pp. 15-16. The City's letter also advised plaintiff that it would "remain in contact with the Millers with the clear understanding that the violations must be addressed in a timely fashion." *Id.*, p. 1. Despite the City's response, plaintiff alleges that the city "has made no legitimate effort whatsoever" to address the conditions in plaintiff's neighborhood. Doc. 1, p. 18, ¶ 117. Further, plaintiff claims the City's letter and purported enforcement efforts "served as an illegitimate effort to frustrate Plaintiff and negate any further action on the part of the City." *Id.*, ¶ 118.

Plaintiff filed suit on June 10, 2020 under 42 U.S.C. § 1983, alleging two counts of equal protection violations, a substantive due process claim, and a first amendment retaliation claim. *See*

*generally* Doc. 1. Plaintiff's two equal protection claims are based on either his status as an African American male or, alternatively, on his status as a prior plaintiff in an employment discrimination lawsuit against the City. *Id.*, p. 23, ¶ 158-161. Plaintiff claims that the City, motivated by a racially discriminatory animus, has selectively enforced local ordinances "[b]y allowing white Neighborhood residents to continually violate said ordinances while penalizing African American individuals for the same offenses throughout the community." *Id.*, p. 24, ¶ 162. He claims that the City intended to deprive him of his rights to equal enforcement of the laws, and this was also motivated in part by his prior employment suit against the City. *Id.*, ¶ 169. Additionally, plaintiff's due process claim alleges that defendants "arbitrarily, capriciously, wrongfully, and without a rational basis fail[ed] to enforce on the Neighborhood properties…the ordinances designed to protect property owners in the City of Jennings, resulting in Plaintiff's loss of utility and value in his home and property." *Id.*, p. 26, ¶ 178. Plaintiff further alleges that the City, by denying him the opportunity to raise his property complaints in City Council meetings, denied him access to the "procedural safeguards designed to protect his property from the adverse impacts of ordinance violations." *Id.*, ¶ 179-180. Finally, plaintiff's first amendment retaliation claims allege that in retaliation for his prior lawsuit against the city, or alternatively, in retaliation for raising complaints about ordinance violations in his neighborhood, defendants have "taken an adverse and punitive stance against Plaintiff in his efforts." *Id.*, p. 27, ¶ 184-185.

To summarize, plaintiff has two claims under the equal protection clause: (1) a claim for race discrimination arising from his status as an African American; (2) a "class of one" claim for discrimination against him as a former litigant against the City. He brings a substantive due process claim that allegedly arises from the City's failure to remedy the ordinance violations. Finally, he has two retaliation claims arising from two different types of first amendment activity: (1) a claim

arising from retaliation against him for complaining to the city about the various violations; and (2) a claim arising from retaliation against him for filing the 2016 employment discrimination lawsuit against the City.

Defendants have filed a Motion to Dismiss plaintiff's claims on the ground that they have prescribed. Doc. 4, p. 1. Alternatively, defendants argue plaintiff's claims as pled are substantively deficient. *Id*., pp. 1-2. Defendants argue that (1) for plaintiff's equal protection claims, he fails to plead facts indicating he experienced differential treatment from others similarly situated, that such treatment stemmed from the City's discriminatory intent, and that he was a "class of one" based on his status as a prior litigant against a city;[2] (2) for his substantive due process claim, he has failed to plead a recognized liberty or property interest under the Fourteenth Amendment;[3] (3) for his first amendment retaliation claims, he fails to allege facts establishing that the City's retaliatory motive caused his injury.[4] Additionally, defendants argue that the claims against the City officials in their official capacities are redundant because plaintiff named the government entity itself, and in accordance with Fifth Circuit precedent, this court should dismiss those claims. Doc. 4, att. 1, pp. 19-20. Defendants also contend that plaintiff failed to state claims against them in their individual capacities under § 1983 because plaintiffs did not allege facts showing that qualified immunity does not apply. *Id*., pp. 20-21.

## II.
### LAW & ANALYSIS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v.*

---

[2] Doc. 4, att. 1, pp. 14-16.
[3] *Id*., pp. 17-19.
[4] *Id*., pp. 18-19.

*Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court also reviews such motions "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). While factual assertions are presumed to be true, "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are not enough to withstand a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, No. 14-401, 2014 WL 4700254 at *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

Generally, in order to state a claim under the Equal Protection Clause, a plaintiff must either plead that they are a member of a protected class or show that they are a "class of one." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.,* 786 F.3d 400, 419 (5th Cir. 2015). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Crain v. City of Selma*, 952 F.3d 634, 642 (5th Cir. 2020) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). Alternatively, to state a "class of one" equal protection claim, the plaintiff must show that: (1) he or she was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the difference in treatment. *Rountree v. Dyson*, 892 F.3d 681, 685 n. 10 (5th Cir. 2018). To state a claim for a substantive due process, the plaintiff must first establish

a recognized liberty or property interest protected by the Fourteenth Amendment, and that he was "intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994); *see also Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249-50 (5th Cir. 2000). Finally, to state a claim for first amendment retaliation, a plaintiff must show that: (1) he was engaged in a constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenen. v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

   "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (citing *Lone Star Motor Imp., Inc. v. Citroen Cars Corp.*, 228 F.2d 69, 75 (5th Cir. 1961)). Denial of leave to amend is justified where a court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment…" *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Otherwise, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

## A. Prescription

   "Federal courts considering claims under § 1983 borrow the relevant state's statute of limitations for general personal injury actions" and should give effect to any applicable tolling provisions. *Perez v. Physician Assistant Bd.*, 765 F. App'x 960, 963 (5th Cir. 2019) (citing *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018)); *Gartrell v. Gaylor*, 981 F.2d 254,

257 (5th Cir. 1993). Louisiana's statute of limitations or "prescriptive period" for personal injury actions is one year. *Jones v. Orleans Parish Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982); *see also* La. Civ. Code Ann. art. 3492 (2020). Federal law, however, governs the commencement of prescription for a § 1983 action, providing that the cause of action accrues when "the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Jackson v. City of Hearne*, 959 F.3d 194, 205 (5th Cir. 2020) (quoting *Piotrowski v City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) ("*Piotrowski II*"). Sufficient "knowledge" requires awareness of both (1) existence of the injury and (2) the connection between the injury and a defendant's actions. *Granger v. Raider*, No. 15-2857, 2016 WL 4706075 at *3 (W.D. La. Aug. 15, 2016) (citing *Piotrowski v. City of Houston,* 51 F.3d 512, 516 (5th Cir. 1995) ("*Piotrowski I*"). Actual knowledge is not required if "the circumstances would lead a reasonable person to investigate further." *Piotrowski I*, 51 F.3d at 516.

The continuing violation doctrine is a federal common law doctrine governing accrual. *Heath v. Bd. Of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). This doctrine "extends the limitations period for otherwise time-barred claims…" *Noack v. YMCA of Greater Hous. Area*, 418 F. App'x 347, 351 (5th Cir. 2011) (unpubl.). For the continuing violation doctrine to apply, plaintiff must show that the violation manifested itself over time, rather than in a series of discrete acts. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). The Supreme Court has stressed that the equitable version of the continuing violation doctrine is to be invoked only sparingly. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Fifth Circuit has applied this doctrine most commonly in the context of employment discrimination suits but has "recognized its potential applicability in other areas of law as well." *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018). The Fifth Circuit has noted that "courts, including this

one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases." *McGregor v. Louisiana State Univ. Bd. Of Sup'rs*, 3 F.3d 850, 866 n. 27 (5th Cir. 1993). Further, a plaintiff "cannot use the continuing violation theory 'to resurrect claims about [civil rights violations] concluded in the past, even though [their] effects persist." *Id*. (citing *Berry v. Bd. of Sup'rs of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983)).

Here, the defendants maintain that all events giving rise to plaintiff's causes of action occurred a year or more before suit was filed in June 2020. Doc. 4, att. 1, pp. 12-13. Defendants contend that plaintiff's first complaint of violations and the City's subsequent discriminatory acts took place in 2015. *Id*. Defendants maintain that plaintiff's letter he allegedly sent to the City in August 2019 would not revive any untimely claims; instead, the continuing violation doctrine should not apply in this context. *Id*., pp. 13-14.

The plaintiff's opposition argues that the events included in the complaint occurring more than a year before filing were included only as "relevant background evidence of any timely claims" and therefore those dates are irrelevant for commencement of prescription. Doc. 12, p. 23. Plaintiff claims that the City's response to his 2019 letter in which he raised new concerns constituted a "separate and discrete occurrence" for which prescription commenced anew. *Id*., p. 25. Alternatively, plaintiff argues that the defendant's wrongful conduct is "continual in nature;" therefore, prescription was tolled under Louisiana's continuing tort doctrine and only would run "once the continuing cause of the harm abated." *Id*., pp. 28-29.

Plaintiff argues his August 2019 letter does not suggest he had yet acquired knowledge of his equal protection claim for disparate enforcement. *Id*., p. 25. Rather, plaintiff claims his knowledge of the disparate enforcement was not "sufficiently concrete" until receiving a November 2019 response letter from the City. *Id*. Plaintiff further maintains that several exchanges

with the City subsequent to his August 2019 letter occurred within a year of filing suit. *Id.*, pp. 25-26. He claims that after his August 2019 letter, he continued to make various complaints to the City about animal infractions, rotting animal carcasses, violation of vehicle-related ordinances, and his experience of "potential assault and other threatening behavior." *Id.*, pp. 23-24. Plaintiff contends that the City failed to provide any meaningful response to the foregoing complaints, including two dismissive responses from defendant Guinn in April and May of 2020. *Id.*, pp. 23-24. In his May 14, 2020 email response to plaintiff's complaints, defendant Guinn referred plaintiff to the City's in-house counsel and referenced the settlement of plaintiff's prior lawsuit against the city which he (Guinn) "vehemently opposed." *Id.*, p. 24; *see also* Doc. 1, att. 32. Plaintiff argues that until receiving this email, he was unaware of "sufficient circumstances that would lead him to investigate Defendants' litigation-based animosity." Doc. 12, p. 24. He contends that he could not have been aware of defendant's retaliatory motives until that point. *Id.*, p. 26.

Plaintiff maintains that his letter to the City, which he alleges was sent in August 2019, was the earliest prescription could have commenced. Doc. 1, att. 30. In the defendants' Reply, they argue that plaintiff knew of all causes of action nearly two years before filing this suit, as evidenced by a letter to the City dated in August 2018. Doc. 13, p. 3; *see also* Doc. 1, att. 30, pp. 1-5. The letter advises the City that plaintiff retained counsel to represent his interests in "all matters arising from his concerns pertaining to certain zoning matters within the City of Jennings' purview." Doc. 1, att. 30, p. 1.

### 1. Equal Protection Claim for Race Discrimination, Substantive Due Process Claim, and First Amendment Retaliation Claim for Complaints to the City

In conducting our prescription inquiry, we first note that the Plaintiff alleges he sent a letter to the city in August 2019, but the letter attached to his complaint is dated August 12, 2018. Doc. 1, att. 30. While we typically must accept all of plaintiff's allegations of fact as true, we decline to

do so where his own attachment contradicts those allegations. *See Scott v. Performance Contrs*., 166 F.R.D. 372, 374 (M.D. La. 1996) ("when conclusions of fact made in the complaint are contradicted by an attached exhibit, the appended document controls and dismissal is appropriate.") (citing *Associated Builders, Inc., v. Alabama Power Co*., 505 F.2d 97, 100 (5th Cir. 1974)). We therefore proceed with the understanding that at the very latest, plaintiff had knowledge of the City's failures as of August 2018 such that he hired an attorney to represent his interests. As such, we find that upon plaintiff sending that letter, prescription began to run as to (1) his equal protection claim for race discrimination; (2) his substantive due process claim; and (3) his claim of first amendment retaliation based on his prior complaints to the City. The August 2018 letter indicates knowledge of each of these claims.

As to plaintiff's equal protection claim, the 2018 letter references plaintiff's previous complaints "over the past years" and the city's failure to remedy them, as well as his concerns that other less-blighted areas of Jennings received "immediate attention." Doc. 1, att. 30, pp. 1-5. Our conclusion is reinforced by Plaintiff's allegation in his complaint that City Council approved demolition of a home in a predominately white neighborhood on July 10, 2018. Doc. 1, p. 17, ¶ 110-113. Additionally, the 2018 letter complains that "[t]he City of Jennings has failed in upholding the duties it owes to all of its citizens, including Mr. Lehman and others similarly situated on Isabell Street and Tizeno Alley." Doc. 1, att. 30, p. 4. Thus, we find plaintiff had sufficient knowledge of any race-related equal protection claims at that time.

As to plaintiff's due process claim, plaintiff's 2018 letter also mentions that in January 2016, the City of Jennings notified plaintiff that it decided to forego placing his concerns on the agenda as it felt that his issues has been "adequately addressed." *Id*., p. 2. A copy of the City's January 8, 2016 letter advising the plaintiff as such was attached to the plaintiff's 2018 letter. *Id*.,

p. 7. We therefore find that he clearly had knowledge of his substantive due process claim as early as 2016, but certainly by the time he sent the 2018 letter.

Finally, any retaliation claim arising from plaintiff voicing his concerns about ordinance violations has prescribed for the same reasons as his due process claim. Plaintiff contends that defendants prevented him from addressing his concerns at City Council meetings as early as 2016, and thus a first amendment retaliation claim would have also arisen as of the January 8, 2016 letter from the City. Doc. 1, att. 30, p. 7. Plaintiff's 2018 letter to the City, which references the 2016 "retaliation," indicates that he did, in fact, have knowledge of his claim in August 2018 and prescription would have run by June 2020.

As defendants point out, and as evidenced by plaintiff's own exhibits of prior correspondence he sent to the City, the plaintiff likely had knowledge of his claims as early as 2015.[5] Doc. 13, p. 2-3. However, his correspondence with the City shows that, as of August 2018 at the very latest, he had obtained knowledge of the facts supporting his claims such that a reasonable person would have investigated further. Having retained counsel, he was even aware that he had a legal interest in the matter. Accordingly, we find that the foregoing claims had prescribed by the time plaintiff filed suit in June 2020.

Finally, we find that neither the "continuing tort" nor the "continuing violation" doctrine applies to save the aforementioned claims from prescription.[6] As discussed, courts within the Fifth

---

[5] One of plaintiff's attached exhibits, an email he sent to the Louisiana State Fire Marshal, indicates he has been investigating the issues with the Miller property and trailer since 2012. Doc. 1, att. 10, p. 2.

[6] A Fifth Circuit case has noted that the continuing violation and continuing tort doctrines are "analogous." *Blancher v. BASF Corp.*, 177 F.3d 978 (5th Cir. 1999). We note that these two doctrines have "similar, if not the same, theoretical underpinnings" and that the Fifth Circuit has used the two doctrines interchangeably. *See Price v. PCS Nitrogen Fertilizer, L.P.,* No. 3-153, 2010 WL 1005181, at *3, n. 14 (M.D. La. Mar. 15, 2010). As discussed, in a § 1983 action, we must apply state prescription rules, but federal rules of accrual. Here, plaintiff takes the position that the continuing tort doctrine is a "doctrine of accrual" and therefore "ultimately a question of federal law." Doc. 12, p. 28 (citing *Nottingham v. Richardson*, 499 F. App'x 368, 375 (5th Cir. 2012)). Nevertheless, for the sake of completeness, we will analyze the plaintiff's claim under the state-created continuing tort doctrine as well.

-12-

Circuit are hesitant to apply the continuing violation doctrine outside of the employment discrimination context, and we similarly decline to do so here. Here, what plaintiff claims are "continuing violations" are merely the continuing *effects* of alleged violations that have already occurred. *See Berry* 715 F.2d at 979. We find that each of plaintiff's claims, as alleged, would instead be actionable as discrete violations. The nature of each claim is such that it would arise upon the discriminatory act itself, rather than upon the culmination of a series of acts. *See Frank*, 347 F.3d at 136. Thus, we find that the continuing violation doctrine does not apply.

Moreover, even if Louisiana's continuing tort doctrine applied, we find that plaintiff's claims as alleged would not merit this exception to the general prescriptive period. Here, plaintiff essentially alleges the "breach of a duty to right a wrong," a wrong that the Eastern District of Louisiana has noted does not suspend the running of prescription. *Dileo v. Lakeside Hosp.*, No. 9-2838, 2010 WL 598604 at *4 (E.D. La. Feb. 17, 2010) (citing *Crump v. Sabine River Authority*, 737 So.2d 720, 729 (La. 1999)). Plaintiff may not continually re-urge his grievances in order to recommence the prescriptive period and deem the City's subsequent failures to correct an already-existing wrong as "continual" harmful conduct. As defendants point out, to allow plaintiff to bring claims several years after his issues with the City's enforcement efforts arose would effectively read the applicable prescriptive period out of the law. Doc. 13, pp. 5-6; *See Price v. PCS Nitrogen Fertilizer, L.P.*, No. 3-153, 2010 WL 1005181 at *6 (M.D. La. Mar. 15, 2010).[7] Therefore, we find that neither the state "continuing tort" doctrine nor the federal "continuing violation" doctrine exempts plaintiff's claims from the one-year prescriptive period, and his June 2020 suit was therefore untimely as to the claims discussed above.

---

[7] In *Price*, on summary judgment, the court declined to apply the continuing violation doctrine to harassment and retaliation claims where the plaintiffs knew their rights were being violated for over two years prior to filing suit, finding "[f]or the Court to now allow plaintiffs to invoke the continuing violation theory to save [the prescribed claims] would effectively read the limitations period out [of the applicable state statutes]." 2010 WL 1005181 at *6.

Plaintiff alternatively requests leave to amend if we find that he failed to state claim. Doc. 12, pp. 46-47. Defendants argue that plaintiff's prescribed claims cannot be cured through amendment. Doc. 13, p. 10. Additionally, defendants argue that plaintiff has had ample opportunity to make allegations amounting to claims; defendants point out that plaintiff's complaint is "196 paragraphs and 34 exhibits, totaling 145 pages" and "[t]he Opposition is 39 pages." *Id*. As such, defendants maintain no amendment could cure any deficiencies. *Id*. We agree that no additional factual allegations could cure the prescribed claims' legal deficiencies. Thus, any further amendment would be futile, and we deny leave to amend as to those claims. *Stripling v. Jordan Production Co., L.L.C.*, 234 F.3d 863, 872-73 (5th Cir. 2000) (holding that a court is within its discretion to deny leave to amend if the proposed amendment would be futile due to plaintiff's failure to state a claim under Rule 12(b)(6)).

### 2. Claims Arising from Plaintiff's Prior Lawsuit: "Class of One" Equal Protection Claim for Discrimination and First Amendment Retaliation Claim

Notably, plaintiff's August 2018 letter does not indicate plaintiff's knowledge of claims for (1) equal protection based upon his status as a prior litigant against the City; or (2) first amendment retaliation based upon the filing of his lawsuit against the City. Though the plaintiff filed his employment discrimination suit in June 2016 and settled the case in January 2019,[8] plaintiff was unaware until May 2020 of circumstances that would lead him to investigate the defendants' discriminatory animus stemming from prior lawsuit. Doc. 12, p. 24.

Defendant Guinn's email sent to plaintiff in May 2020 referred plaintiff to the City's in-house counsel, stating that "[h]e has been briefed on your past employment with the city and the settlement (which I vehemently opposed.) I have also informed him of your involvement helping

---

[8] Doc. 1, p. 3, ¶ 10-12

others draft or attempt to draft litigation against the city." Doc. 1, att. 32. We find that this email was the first notice plaintiff had of the potential discrimination against him for his 2016 lawsuit against the City. This was the first indicator of both (1) a first amendment retaliation claim for the lawsuit and (2) an equal protection claim based on his "class of one" status as a prior litigant. As such, we find that these two claims did not prescribe, and plaintiff's June 2020 filing was timely as to these claims. For the remaining causes of action, we must now address defendants' substantive challenges to plaintiff's claims for relief.

### B. "Class of One" Equal Protection Claim

Plaintiff attempts to establish that he is a "class of one." Doc. 1, p. 23, ¶ 158-159. To establish a "class of one" claim, the plaintiff must show that: (1) he or she was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the difference in treatment. *Rountree,* 892 F.3d at 685 n. 10. Defendant alleged that he was subject to "selective enforcement of the ordinances" based, in part, on his status as a plaintiff in the previous lawsuit. Doc. 1, p. 24, ¶ 169. As plaintiff acknowledges,[9] his equal protection claim is best classified as a "selective enforcement" claim, which requires an additional showing that the government's actions were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. *Mary v. Brister*, No. 17-4977, 2019 WL 1326427 at *2-3 (E.D. La. Mar. 25, 2019) (citing *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)).

Defendants argue that the plaintiff has failed to state an equal protection claim because he fails to allege facts showing that he is a "class of one." Doc. 4, att. 1, pp. 14-16. Rather, defendants argue that plaintiff's general allegations, while claiming differential treatment, do not identify any specific person or person similarly situated to him. *Id*., p. 16. Plaintiff argues that Fifth Circuit

---

[9] "Due to the Defendant's actions in enforcing ordinances in the manner alleged, Plaintiff's claim is most adequately classified as a selective enforcement claim." Doc. 12, p. 33.

precedent does not require him to offer a "squarely defined comparator," and that the "similarly situated" analysis is flexible. Doc. 12, p. 35. Plaintiff argues that, because he has long been involved in and has remained highly aware of the City's enforcement efforts, he can "plausibly determine" that he has been singled out because "others in the inverse category (i.e., residents who have not litigated similar claims against the City) do not experience a complete dearth in code enforcement." *Id.*, p. 36. Plaintiff cites a Supreme Court case for the proposition that a plaintiff may establish a "class of one" claim where a municipality intentionally discriminates against a former litigant as opposed to non-litigants. *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000)).

According to plaintiff's opposition, his complaint alleges that "while others who have not filed a lawsuit of a particular nature against the City benefit from Defendants' enforcement of the Jennings Code, Plaintiff received no such benefit due to his status as a former adverse litigant." Doc. 12, p. 33 (citing Doc. 1, p. 27, ¶ 187, 189). The cited portions of his complaint do not actually allege as such. Those paragraphs only provide that defendants assumed a "malicious disposition" towards plaintiff and have retaliated against him for the prior claims he asserted against the City. Doc. 1, p. 27, ¶ 187, 189. Moreover, plaintiff only makes general allegations that he was "subject to disparate treatment from others similarly situated" but fails to point to any specific person or persons who were similarly situated. *Id.*, ¶ 167. Nowhere does he actually allege that someone who did not file a lawsuit against the City received the benefit of enforcement of the same ordinances. As a legal conclusion devoid of factual enhancement, we need not accept his allegation of disparate treatment as true. *See Rountree*, 892 F.3d at 685 ("An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit.") As such, plaintiff fails to state a claim for selective enforcement under the Equal Protection clause.

We find plaintiff's reliance on *Olech* and other related cases unfounded.[10] In *Olech*. the defendant Village demanded a 33-foot easement from the plaintiff as a condition of connecting her property to the municipal water supply. 528 U.S. at 565. Plaintiff identified a specific group of similarly situated property owners from which the Village only demanded 15-foot easements. *Id*. Though the *Olech* plaintiff alleged that her prior litigation against the Village was a subjective motivation for the Village's discrimination, the Court's analysis ultimately turned on plaintiff's proper identification of a similarly situated group. *Id*. at 563-65. The Court found that, the Village's subjective motivations aside, the aforementioned allegation of differential treatment from an identified group coupled with the allegation that the Village's decisions were "irrational and wholly arbitrary" was sufficient to state a claim under the equal protection clause. *Id*. Thus, we are not persuaded by plaintiff's reliance on *Olech*; unlike the *Olech* plaintiff, he has failed to plead differential treatment from a similarly situated group.

We find plaintiff's "class of one" claim to be substantively deficient. However, we do note the Federal Rule's directive that courts should freely grant leave to amend. Fed. R. Civ. P. 15(a)(2). Plaintiff's prescribed claims could not be cured through further amendment. Here, however, finding no substantial reason to deny plaintiff's request, we would recommend allowing plaintiff leave to amend his complaint before dismissing his second equal protection claim. In the event plaintiff fails to allege a proper "class of one" claim, we recommend dismissal.

---

[10] Plaintiff cites *Mary v. Brister* as an analogous case. In *Mary*, St. Tammany Parish government officials allowed a construction company to fill on the lot adjacent to plaintiff's lot in violation of a parish ordinance and plaintiff's subsequent complaints of the violations were not addressed. No. 17-4977, 2019 WL 1326427 at *1 (E.D. La. Mar. 25, 2019). We find plaintiff's reliance on *Mary* inapposite for our "similarly situated" inquiry as the *Mary* Court dismissed plaintiff's equal protection claim on the ground that they failed to allege the government's actions were motivated by "race, religion, or other arbitrary classification." *Id*. at *3. The court did not address the other two prongs of the "class of one" analysis. *Id*.

### C. First Amendment Retaliation Claim

Finally, plaintiff urges a first amendment retaliation claim contending that, in retaliation for plaintiff bringing a employment discrimination lawsuit against the City, defendants have "acted with ill intent to deprive Plaintiff of the right to address his concerns and seek relief in the public forum hosted and regulated by Defendants and the City Council." Doc. 1, p. 27, ¶ 189. Moreover, he claims that they have intentionally deprived him of the "equal enforcement of City ordinances" in retaliation for his prior lawsuit. *Id.*, ¶ 190.

To state a claim for first amendment retaliation, the plaintiff must show that: (1) he was engaged in a constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Keenen* 290 F.3d at 258. Plaintiff must allege a causal connection between the government's retaliatory animus and the his subsequent injury. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.*

Defendants argue that plaintiff does not allege that the City caused his injury but only that the City failed to remedy a pre-existing injury. Doc. 4, att. 1, p. 18. Defendants maintain that, because the injury—living near allegedly blighted property—existed prior to the City's alleged failure to enforce the local ordinances, that plaintiff does not plausibly establish causation. *Id.* Moreover, defendant argues the City's alleged failures to enforce the ordinances as to the Miller property date as early as 2015, which was prior to plaintiff's 2016 lawsuit against the City. *Id.*, p. 19. Thus, defendants claim, any alleged "retaliatory animus" stemming from the lawsuit could not have caused plaintiff's injury. *Id.* Finally, defendants argue that plaintiff does not actually allege

his free speech rights have been curtailed since he has continued to make complaints to the City and its officials. *Id*.

The plaintiff responds that defendants construe his "injury" far too narrowly, and his injury in fact encompasses not only living near the blighted property but also the decline in value of his own investment and rental properties, as well as "the development of nuisances and hazards to his health and safety." Doc. 12, p. 41. Moreover, plaintiff argues that "injury" can consist of merely "the deprivation of a constitutional right" and defendants need not have completely silenced him for him to incur an actual injury. *Id*., p. 42. He claims the fact that he was "directly precluded" from presenting his complaints at City Council meeting—a public forum—establishes a cognizable First Amendment injury. *Id*.

We find that here plaintiff has stated a claim for first amendment retaliation. He has alleged that he engaged in a protected first amendment activity—filing a lawsuit against the City. *Wilson v. Thompson*, 593 F.3d 1375, 1387 (5th Cir. 1979) ("It is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances.") Plaintiff has alleged facts and provided an exhibit illustrating the defendants' retaliatory animus against him, which only became evident to him after he settled the lawsuit with the City. Doc. 1, p. 20, ¶ 131; Doc. 1, att. 32. Plaintiff alleged a cognizable injury: though defendants argue that merely being located near a blighted property is not an "injury," plaintiff has also alleged a deprivation of his constitutional rights, which alone would be sufficient. Doc. 12, pp. 41-42 (citing *Keenan,* 290 F.3d at 259). He has alleged causation: that defendants' retaliatory animus was the reason the City declined to address his complaints and the reason they prevented him from raising his concerns City Council meetings. Doc. 1, p. 27, ¶ 189-190. Defendants correctly argue that the 2015 and 2016 events—prior to plaintiff filing suit—could not have given rise to retaliation claims. Doc. 4,

att. 1, p. 19. However, plaintiff has also alleged various denials of his constitutional rights occurring after he filed the employment suit. Therefore, we find that he has sufficiently plead causation. Since he has alleged sufficient facts and stated a plausible claim, we recommend denial of the defendant's motion as to plaintiff's first amendment retaliation claim arising from his prior lawsuit.

### D. Permissibility of Officer Suits

It is well-settled that suing a municipal official in his or her official capacity is simply another way of alleging municipal liability. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 n. 55 (1978). "Where official capacity claims are duplicative of claims against the municipality itself, the official capacity claims should be dismissed." *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387 at *4 (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)). Here, plaintiff has filed suit against the City of Jennings, and various City officials in both their individual and official capacities. Doc 1, pp. 1-2. Defendant argues that in accordance with Fifth Circuit precedent, the redundant claims should be dismissed. Doc. 4, p. 2. We agree and recommend dismissal of plaintiff's claims insofar as they name the City's officials in their official capacities.

### E. Qualified Immunity

The doctrine of qualified immunity shields officials from civil liability when their conduct "does not violate clearly established … constitutional rights of which a reasonable person would have known." *Senegal v. Sheriffs Dep't Beauregard Par*., No. 16-1756, 2018 WL 2372641 at *4 (W.D. La. May 8, 2018) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Since qualified immunity is a defense, the burden of pleading it rests with the defendant." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Only then does the burden shift to the plaintiff to plead facts that demonstrate

liability and defeat immunity. *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019). Qualified immunity claims are analyzed through a two-step sequence, in which the court determines (1) whether plaintiff can "make out a violation of a constitutional right" and then (2) "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Moreover, the plaintiff must show that the official's conduct was objectively unreasonable "as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The defendants argue that plaintiff's claims should be dismissed under the doctrine of qualified immunity because plaintiff failed to adequately plead facts establishing (1) a constitutional violation and (2) that the City officials' conduct was objectively unreasonable. Doc. 4, att. 1, p. 20. We simply find that dismissal on the ground of qualified immunity is premature at this stage in the litigation. As we have noted in the past, "[a] plaintiff raising a § 1983 claim is not required to anticipate a defense of qualified immunity in his complaint." *Scoggins v. Wise*, No. 14-573, 2015 WL 10477563 at *2 n. 3(W.D. La. Dec. 14, 2015) (citing *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995); *See also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (finding that a plaintiff need not "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12."). Thus, we find that the plaintiff's remaining claims survive the defendant's Motion to Dismiss regardless of whether plaintiff plead facts showing that qualified immunity does not apply.

### III.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Dismiss be **GRANTED** in part and **DENIED** in part. **IT IS RECOMMENDED** the court **GRANT** defendant's Motion to Dismiss plaintiff's (1) equal protection claim for race discrimination; (2)

substantive due process claim; and (3) first amendment retaliation claim arising from voicing his complaints to the City, as these three claims have prescribed. We **RECOMMEND** the court **DENY** defendant's Motion to Dismiss plaintiff's first amendment retaliation claim arising from his prior lawsuit against the City. Finally, we **RECOMMEND** the court **DENY** defendant's Motion to Dismiss plaintiff's equal protection "class of one" claim and we grant plaintiff leave to amend his complaint within 30 days of this ruling. If either party objects to this Report and Recommendation, the deadline for amendment will be suspended pending a ruling from the District Court.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez,* 828 F. App'x 224, (5th Cir. 2020) (unpubl.)

THUS DONE AND SIGNED in Chambers this 8th day of February, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE