UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER LEHMAN** | : | **CIVIL ACTION NO. 20-CV-736** |
| **VERSUS** | : | **JUDGE TERRY A. DOUGHTY** |
| **HENRY GUINN, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Partial Motion to Dismiss filed by defendants Henry Guinn, Kevin D. Millican, Steven Vanhook, Bobby Vasseur, and the City of Jennings ("the City") (sometimes collectively referred to as "defendants"). Doc. 19. Plaintiff Christopher Lehman ("Lehman") opposes the motion. Doc. 21. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the local rules of court.

For the reasons stated herein**, IT IS RECOMMENDED** that the defendants' motion be **GRANTED.**

**I.**
**BACKGROUND**

Plaintiff, a resident of the City of Jennings, filed suit on June 10, 2020, claiming that the City has refused to enforce a host of City ordinances in his neighborhood and has not taken action based on the many complaints that he has made. Plaintiff asserted causes of action under 42 U.S.C. § 1983, alleging two claims for equal protection violations, a substantive due process claim, and a first amendment retaliation claim grounded in various theories. *See generally* Doc. 1.

Defendants filed Motion to Dismiss plaintiff's claims pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. We issued an initial Report and Recommendation [doc. 14] suggesting that defendants' motion be granted in part and denied in part, dismissing all of plaintiff's claims except (1) his first amendment retaliation claim as it related to a prior employment lawsuit that he filed against the City and (2) one of his equal protection claims – a "class of one" selective enforcement claim – also arising from his prior lawsuit against the City.[1] *Id.* at pp. 21-22. We found that plaintiff failed to sufficiently plead his "class of one" selective enforcement claim but allowed him an opportunity to amend rather than dismiss, noting that dismissal would result should he again fail to make proper allegations. *Id.* at p. 17. The Report and Recommendation was adopted by the district court.

Plaintiff has now amended his complaint [doc. 18] and defendants filed the present motion in response thereto. Doc. 19. Defendants allege that the complaint still fails to properly assert plaintiff's equal protection "class of one" claim and seek dismissal. *Id.*

Plaintiff's remaining equal protection claim is based on his status as a prior plaintiff in an employment discrimination lawsuit that he filed against the City in 2016. *See* doc. 18, p. 3, ¶ 10. Plaintiff asserts that defendants' actions in failing to address his complaints and enforce ordinances were motivated by ill will resulting from that dispute. *Id.* at p. 25, ¶ 167.

Plaintiff alleges he owns multiple pieces of property, including his home, on intersecting Isabelle Street and Tizeno Alley in the City. *Id.* at p. 4, ¶ 16-17. Plaintiff's complaint cites a host of City ordinances that he claims the City refuses to enforce in his neighborhood and details instances of perceived violations. *Id.*, pp. 6-8, ¶ 32-44. Specifically, plaintiff claims that in 2000,

---

[1] Specifically, plaintiff failed to plead the claim because he made only "general allegations that he was 'subject to disparate treatment from others similarly situated' but fail[ed] to point to any specific person or persons who were similarly situated." *Id.* at p. 16.

the previous owner of the neighboring property received a permit to place a trailer on the property in violation of the City's zoning ordinances which precluded the use of "mobile homes" and "travel trailers" in plaintiff's neighborhood, zoned as "strictly residential." *Id*. at p. 8, ¶ 45 and n. 3. Plaintiff alleges that the property was purportedly transferred to Randall and Loretta Miller ("the Millers") in 2007 and has fallen into disrepair since. *Id*. at p. 13, ¶ 80-81. Plaintiff claims the trailer's structure does not conform with a number of the City's zoning ordinances or safety standards, and that the Miller's property as a whole has become "increasingly unkempt and fell into a continually worsening state of disrepair."[2] *Id*., p. 13, ¶ 80-81. The plaintiff claims five other properties within his neighborhood are vacant (some for over 30 years), dilapidated, and beyond repair, similarly in violation of City ordinances.[3] *Id*., pp. 14- 15, ¶ 90-93. Plaintiff alleges that he has complained to the City about the properties' danger, their effect on property values, the increase in suspicious or criminal activity, as well as instances of harassment directed towards him, which the City has ignored and failed to properly investigate and address. *Id*., p. 17, ¶ 109; p. 21, ¶ 142. Plaintiff alleges that "the City has made no legitimate effort whatsoever to rectify the violations and hazardous conditions of" the neighborhood and has also prevented him from raising these concerns at City Council meetings. *Id*., pp. 15-17, ¶ 93, 101-108.

In August of 2019, plaintiff sent a letter through counsel to the City Council and defendant Mayor Guinn "detailing the gamut of violations and the City's failure to fulfill its duty to enforce and remedy the same under the applicable ordinances." *Id*. at p. 17, ¶ 115, n. 10; *see also* att. 36. According to the City's response, dated November 2019, a third-party inspector inspected the

---

[2] Specifically, he alleges the lot is "characterized by its excessive buildup of trash, an overgrowth of fauna, haphazardly and temporarily rigged utility lines, its numerous, abandoned, stripped, or junked motor vehicles[], and its utilization as a perpetual host to two (2) unlicensed mobile trailer campers." Doc. 18, p. 13, ¶ 81.

[3] Plaintiff alleges that one of the five blighted properties, 902 Tizeno Alley, has remained abandoned for greater than 3 months, violates Louisiana sanitation laws, and "suffers an accumulation of bulk trash, roof damage, falling siding, structural disrepair, and an open side shed with exposed interior walls with open holes and receives no water, sewer, or electrical service." *Id*. at p. 15, ¶ 92. Plaintiff attaches photos of the property at doc. 18, att. 18.

Miller structure and concluded that it was a "Cabin" instead of a trailer, therefore complying with local ordinances. Doc. 18, att. 17, p. 1. The City Inspector also found several violations of local ordinances and issued the Millers notice of the violations in September 2019. *Id*. at pp. 15-16. The City's letter advised plaintiff that it would "remain in contact with the Millers with the clear understanding that the violations must be addressed in a timely fashion." *Id*. at p. 1. Despite the City's response, plaintiff alleges that the city "has made no legitimate effort whatsoever" to address the conditions in plaintiff's neighborhood and that the defendants have "consistently failed to fulfill their ministerial duties of enforcement as they concern Plaintiff." Doc. 18, p. 18, ¶ 117.

Plaintiff claims that "individuals who did not file a lawsuit against the City regularly and consistently receive the benefits of enforcement of zoning ordinances and . . .the Jennings Code." *Id*. at p. 18, ¶ 121. As mentioned, we previously ordered plaintiff to amend his complaint because he failed to identify similarly situated individuals who did not file lawsuits against the city but received the benefit of enforcement of the same ordinances. Doc. 14, p. 16. In his amended complaint, in an attempt to properly allege similarly situated individuals, plaintiff includes eight new paragraphs which set forth allegations related to differential treatment. Doc. 18, ¶ 120-126, 169. Each alleges a situation whereby the City made enforcement efforts as it relates to blighted property.

In the present Partial Motion to Dismiss, defendants argue that the plaintiff's amended complaint still does not state an equal protection claim because he fails to show that he is a "class of one" by setting forth facts that he was intentionally treated differently from others similarly situated. Doc. 19, att. 1, p. 1. Defendants argue that each of the amended allegations fails to plead individuals that are sufficiently similar to plaintiff. *Id*. In response, plaintiff argues that (1) precedent does not require him to set forth a similarly situated comparator; and (2) alternatively,

if required, the allegations are sufficiently pled. *See generally* doc. 21. Defendants argue in reply that the claims made by plaintiff do not form a proper basis for a selective enforcement claim at all, as there has been no enforcement against plaintiff, only a lack of enforcement against others. Doc. 22.

## II.
### RULE 12(b)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court also reviews such motions "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). While factual assertions are presumed to be true, "labels and conclusions" and "formulaic recitation of the elements of a cause of action" are not enough to withstand a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is not to evaluate the plaintiff's likelihood of success, but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (1993)). Exhibits attached to the complaint are to be treated as part of the complaint for all purposes under FED. R. CIV. PROC. 10(c). "[W]hen conclusions of

fact made in the complaint are contradicted by an attached exhibit, the appended document controls and dismissal is appropriate." *Scott v. Performance Contractors, Inc.,* 166 F.R.D. 372, 374 (M.D.La. 1996) (citing *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974); *Tucker v. National Linen Serv. Corp.,* 200 F.2d 858, 864 (5th Cir.)).

### III.
### APPLICATION OF THE RULE 12 (b)(6) STANDARD
### TO PLAINTIFF'S STATED CAUSE OF ACTION

Plaintiff attempts to allege a "class of one" selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment. To make a "class of one" claim, a plaintiff must show (1) that he "has been intentionally treated differently from others similarly situated," and (2) that "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 120 S.Ct. 1073, 1074 (2000). The Fifth Circuit recognizes three different types of class-of-one claims: (1) "selective enforcement"; (2) adverse zoning permit decisions; and (3) "personal vindictiveness." *See Mikeska v. City of Galveston*, 451 F.3d 376, 381, n. 4. (5th Cir. 2006). A selective enforcement claim requires an additional showing by the plaintiff that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. *Villarreal v. City of Laredo, Texas*, 17 F.4th 532, 544 (5th Cir. 2021) (quoting *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000). Claims that are characterized as challenges to the selective enforcement of ordinances require the plaintiff to show improper motive because selectivity in enforcement may sometimes merely be the result of lack of adequate resources to address all violations or a concentrated effort to allocate scarce resources to the most egregious violations. *Moreno v. City of Brownsville*, 2010 WL 11646748, at *8 (S.D.Tex., 2010) (citing *Bryan*, 213 F.3d at 277, n. 17 and *Dorward v. Ramirez*, 2009 WL 2777880, at *9 (N.D.Tex. 2009)).

Plaintiff alleges that he was subject to "selective enforcement of the ordinances" based on his status as a plaintiff in a previous lawsuit against the City. Doc. 18, p. 18, ¶ 168. We previously ordered plaintiff to amend his complaint because plaintiff's selective enforcement claim failed to identify similarly situated individuals who did not file lawsuits against the city but received the benefit of enforcement of the same ordinances. Doc. 14, p. 16. Defendants argue that plaintiff has once again failed to do so. Doc. 19, att. 1.

At the outset, plaintiff argues setting forth a similarly situated individual is unnecessary for a selective enforcement claim.[4] The protections of the Fourteenth Amendment serve to ensure that similarly situated people are treated alike. *See Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981) ("[T]he essence of the equal protection requirement is that the state treat all those similarly situated similarly."). As a matter of logic, it would be impossible for this court, or any court for that matter, to determine if a plaintiff was treated similarly without him putting forth a comparator. Indeed, the Fifth Circuit very recently stated that a prerequisite to a selective enforcement claim is the showing of a similarly situated individual. *Villarreal*, 17 F.4th at 544. "If no proof of a similarly situated comparator is needed, then there would be no legal difference between [a plaintiff's] equal-protection claim and a garden variety First Amendment retaliation claim." *Craig v. City of Yazoo City, Miss.,* 984 F.Supp.2d 616, 626 (S.D.Miss. 2013) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258–61 (5th Cir.2002)); *see also L & F Homes & Dev., L.L.C. v. City of Gulfport, Miss.*, 538 Fed.Appx. 395, 403 (5th Cir.2013) (noting lack of comparator in selective enforcement claim); *Williams v. Riley*, 275 Fed.Appx. 385, 390 (5th Cir. 2008) (holding in selective enforcement context that "a 'class-of-one' plaintiff must, at a minimum, show he has been intentionally treated

---

[4] Plaintiff cites several cases in support of this contention, none of which we find compelling. In each case, plaintiff construes a court's failure to discuss the "similarly situated" element as an indication that it is unnecessary to the claim. *See* doc. 21, pp. 11-15. This position is amply refuted by the case law discussed.

differently from others similarly situated"). The selective enforcement claim exists as a category under the broad umbrella of the "class of one" claims. *See Mikeska*, 451 F.3d at 376, n. 4. The underlying claims may set forth additional, higher evidentiary burdens (i.e., animus for selective enforcement), but none purport to take away the overarching requirements of pleading and proving a class of one claim. *See id.*; *see also Williams v. Riley*, 275 Fed.Appx. 385, 390 (5th Cir.2008) (In the context of selective enforcement, "a 'class of one' plaintiff must, at a minimum, show he has been intentionally treated differently from others similarly situated."). Thus, this portion of plaintiff's argument does not hold merit.

"Similarly situated" persons are those persons who are standing in the same situation as the plaintiffs in relation to the challenged government action. *Reynolds v. Sims*, 84 S.Ct. 1362, 1383 (1964). "[T]here is no precise formula to determine whether an individual is similarly situated to comparators.'" *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012). The "similarly situated" inquiry is "case-specific" and "requires us to consider the full variety of factors that an objectively reasonable . . . decisionmaker would have found relevant." *Id.* at 233-234. When a case "involves the application of an ordinance or statute, the plaintiff's and comparators' relationships with the ordinance at issue will generally be a relevant characteristic for purposes of the similarly-situated analysis." *Id*. at 234.

Plaintiff asserts claims that the City did not act on his complaints because of his status as a prior litigant, so a similarly situated individual would be one who has not filed suit against the city, who lodged complaints with the City, and whose complaints led to enforcement by the City of the code or ordinance. Pointing to individuals who made no complaint and merely lived near a property on which the City acted, or to general Jennings residents who benefitted from the City's remedial actions or zoning enforcement is insufficient.

Plaintiff's amended complaint, which is thirty-two pages long and includes thirty-nine attachments, attempts to set forth several possible "comparators," all of which fail for various reasons. "This is not a case where the plaintiff has pleaded too little, but where he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." *Tucker*, 200 F.2d at 864 (5th Cir. 1953). Plaintiff, by including such voluminous evidence with his complaint, has precluded this court from accepting his allegations as true, as many allegations are refuted by the attachments.[5] For example, in paragraph 126 of his amended complaint, plaintiff states that

> In July of 2020, the City Council acknowledged multiple complaints from citizens who reported blighted conditions of homes at 1018 Nezpique and 1020 West Plaquemine Street, and confirmed demolition plans for the structures in enforcement of the City's zoning and Code ordinances. As such, the surrounding residents, some, if not all of whom, upon information and belief, are not prior litigants against the City, benefitted from the City's enforcement efforts.

Doc. 18, p. 19, ¶ 126 (internal citations omitted). In support of this statement, plaintiff attaches to his complaint a news article discussing the properties. Doc. 18, att. 34. The article states that defendant Guinn slated the properties for demolition in response to complaints and phone calls received. Guinn noted that one property was being utilized for a purpose for which it was not zoned. *Id*. at p. 2. (indicating that three structures were on one lot, and people once lived in said

---

[5] Plaintiff mischaracterizes several allegations which he puts forth to serve as comparators.
For example, in paragraph 122, plaintiff states that defendant Guinn made certain remarks about a property, when in fact, the attached article indicates that it was the city-inspector, Phil Arceneaux. Doc. 31, att. 30. Plaintiff attempts to state that the city-inspector's comments (although he alleges the comments to have been made by Guinn) about a property ("the house is abandoned and the windows are broken out and unsafe"), serve to make the city-inspector a similarly situated individual. Clearly, the city inspector commenting on properties, i.e. doing his job, cannot serve to make him a similarly situated individual to Lehman in his efforts to lodge complaints with the city to have property conditions remedied.

Further, in paragraph 123, plaintiff attempts to utilize Monica Fontenot as a similarly situated individual. He states that Fontenot complained to the city that trespassers were vandalizing and damaging a structure. Doc. 18, ¶ 123. The article [doc. 18, att. 31] actually states that Fontenot was tasked with cleaning up a property that was deemed unsafe. When the deadline for her to complete cleanup came and went, she informed council members that she believed trespassers were causing further damage. *Id*. A citizen giving an explanation as to why a property is not in compliance is not a similarly situated individual to one who complains that properties out of compliance need be addressed.

structures, making it "multi-family" and "it's not zoned for that"). However, the article does not indicate who made the complaints.

In many of plaintiff's allegations, the fatal flaw is that plaintiff does not set forth the identities of his proposed comparators. Specifically in paragraph 126, plaintiff states that complaints were made and that "some, if not all of" the surrounding residents who benefitted from enforcement efforts "are not prior litigants against the city." The controlling news article upon which plaintiff bases his statements makes no mention of the complainants' identities, so we do not know who made the complaints and whether they were prior litigants. *See* doc. 18, att. 34. Even accepting the remainder of his allegation as true, whether the surrounding residents – who benefitted from enforcement, but who are not alleged to be the complainants – were nonlitigants is inapposite. It is imperative to plaintiff's claim that he plead facts that a nonlitigant made a complaint and benefited from enforcement. "Without knowing who the comparators are or the circumstances of their cases, it is impossible to know whether they are similarly situated." *Wells v. Newkirk–Turner*, 2014 WL 5392960, at *4 (S.D.Miss. 2014). "An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit." *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018). Plaintiff's conclusory assertions, in failing to set forth who the comparators are, lack the required specificity to survive dismissal and are not entitled to an assumption of truth under the standard set forth in *Iqbal*. *See Jones*, 339 F.3d at 362.

Plaintiff names an individual in only one instance – Kayla Gary –alleging that "[a] resident and or neighbor to these properties, Kayla Gary, whom, upon information and belief, is not a prior litigant against the City, benefitted from the City's zoning and ordinance enforcement efforts." Doc. 18, p. 19, ¶ 125. We simply have no idea who Ms. Gary is. She expressed her support for demolition of properties in the attached news article [doc. 18, att. 33], but plaintiff does not allege

anything else about Ms. Gary that would allow us to conclude that she is similarly situated. There is no allegation that Ms. Gary complained about the property and the City then acted based on the complaint. Even accepting as true plaintiff's allegation that she is not a prior litigant as it relates to the City, without further information, we cannot consider the "full variety of factors" that an objectively reasonable decisionmaker would find relevant here. *Lindquist*, 669 F.3d at 234.

In sum, plaintiff cites numerous instances whereby he claims that he suffered unequal treatment as it relates to having his complaints resolved, but each allegation is flawed.[6] As stated by defendants, "Plaintiff alleges nearly every factual scenario except the one needed to successfully plead a "class of one" equal protection claim." Doc. 19, att. 1, p. 10. Because plaintiff does not identify any person(s) who has not filed suit against the city, who lodged complaints with the City, and whose complaints led to enforcement by the City of the code, his "class of one" selective enforcement claim must fail.

Moreover, even if we were to find that plaintiff adequately pled a similarly situated individual, his claim would still fail. As reiterated by the court in *Parachini* when faced with an issue significantly similar to this, the court explained that unequal legal treatment is not synonymous with a violation of the Equal Protection Clause:

> [Selective enforcement] has two meanings in the law: first simply failing to prosecute all known lawbreakers, whether because of ineptitude or (more commonly) because of lack of adequate resources. The resulting patten of non-enforcement may be random, or an effort may be made to get the most bang for the prosecutorial buck by concentrating on the most newsworthy lawbreakers, but in either case the result is that people who are equally guilty of crimes or other violations receive unequal treatment, with some being punished and others getting off scot-free. That form of selective prosecution, although it involves dramatically unequal legal treatment, has no standing in equal protection law. *Wayte v. United States*, 470 U.S. 598, 607-08 (1985); *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992). The second form of selective prosecution, and the only one that is actionable

---

[6] In paragraphs 122 and 124, plaintiff does not set forth facts that a complaint was made by a nonlitigant. *See also* fn. 4.

> under the federal Constitution, is where the decision to prosecute is made either in retaliation for the exercise of a constitutional right, such as the right to free speech or to the free exercise of religion, or because of membership in a vulnerable group. *E.g., Wayte*, 470 U.S. at 608.

*Paranchini* v. Town of South Padre Island, 2010 WL 11646726, at *6 (S.D.Tex. 2010) (quoting *Esmail*, 53 F.3d at 178-179) (alterations in original).

Defendants argue that no laws have actually been enforced at all against plaintiff; rather, his grievances lie in the fact that the City has failed to enforce laws as it relates to other properties for deficiencies perceived by Lehman. Plaintiff's selective enforcement claim alleges that he has complained to the City about perceived ordinance violations existing on third-party properties that have suffered the remedy that he seeks – destruction of the property or what Lehman defines as satisfactory enforcement of a code provision. Plaintiff has not set forth, nor has this court been able to find, any case law that supports plaintiff's claim that the failure to enforce zoning ordinances against third parties can give rise to a "class of one" theory of relief under equal protection. Other jurisdictions have addressed similar claims and held that the Equal Protection Clause does not protect against the government's failure to enforce a law or regulation against another. In *EDCO Envtl. Servs. Inc. v. City of Crown Point, Ind.,* the plaintiff brought to the City's attention that a competitor company was in violation of the zoning code. The City did not enforce the code against the alleged violator, so plaintiff claimed an equal protection violation. In deciding a Motion to Dismiss, the court stated that "[t]he City's failure to prosecute [the other company] for zoning violations no more singles out Plaintiff for discriminatory treatment than a law-abiding motorist could be considered to be targeted for discriminatory treatment because the police did not issue a ticket to a speeder," and dismissed plaintiff's equal protection claim. *EDCO Envtl. Servs. Inc. v. City of Crown Point, Ind,* 2014 WL 4680746, at *3 (N.D. Ind. 2014); *see also Gray v. Town of Easton*, 115 F.Supp.3d 312 (D. Conn. 2015) ("[t]he Equal Protection Clause does not require ...

governments to enforce the law against everyone or against no one at all."); *Scherer v. City of Merriam*, 2002 WL 1067458, at *3 (D. Kan. 2002) ("In general, provided that an ordinance is rationally based, the failure to enforce it with complete equality does not of itself infringe the constitutional principle of equal protection.").

Even accepting as true the fact that the City disregarded plaintiff's complaints and failed to enforce zoning ordinances as it concerned the complained about properties, a selective enforcement claim cannot be founded on the fact that a local government's choice of action was unsatisfactory as it pertains to an unrelated third-party. "[O]bserving selective enforcement is not an actionable claim because [plaintiff] cannot argue for the benefit of third parties." *Parachini*, 2010 WL 11646726, at *6. Plaintiff does not allege that he was equally in violation of the ordinances as individuals similarly situated who were treated differently – this is not a situation whereby the City chose to demolish Mr. Lehman's home but allowed a similarly situated home to remain standing. Plaintiff alleges that the violative properties of which he complains are getting away scot-free while others throughout the City have been destroyed or are slated to be. Even accepting this as true, plaintiff's Equal Protection rights are not violated if the City does not enforce ordinances against others. *Id*. Plaintiff's argument is insufficient to establish a selective enforcement claim, as it has no standing in equal protection law. *Esmail*, 53 F.3d at 178-179.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Partial Motion to Dismiss (Doc. 19) be **GRANTED** and that plaintiff's equal protection "class of one" claim be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond

to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.

      THUS DONE AND SIGNED in Chambers this 23rd day of February, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE