UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

CHRISTOPHER LEHMAN              CASE NO.  2:20-CV-00736

VERSUS                               JUDGE TERRY A. DOUGHTY

HENRY GUINN ET AL              MAGISTRATE JUDGE LEBLANC

MEMORANDUM ORDER

Before the Court is a Motion to Strike Plaintiff Christopher Lehman's ("Lehman") Affidavit [Doc. No. 63] filed by Defendants, City of Jennings, Louisiana, and Henry Guinn, Kevin D. Millican, Steven VanHook, and Bobby Vasseur (collectively, "the City"). Lehman filed an Opposition to the City's Motion [Doc. No. 65], and the City filed a Reply [Doc. No. 66].

For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **FACTS AND BACKGROUND**

On June 10, 2020, Christopher Lehman, brought this 42 U.S.C. §1983 action against the City, alleging first amendment retaliation.[1] During Lehman's deposition, he testified as to when the retaliation began.[2]

> A. – at that particular time, we're talking about 2016. You asked me to go back and explain to you when did I first noted that the mayor was being…[3]
>
> Q. Retaliatory?
>
> A. Retaliatory. So –
>
> ***

---

[1] [Doc. No. 1].
[2] [Doc. No. 44-3; Deposition of Christopher Lehman].
[3] [Doc. No. 44-3, p. 2; Deposition of Christopher Lehman at pp. 111].

A.  So as – in my mind, to answer your question – [4]

Q. Right.

A. – and stuff, as early as 2017, there's a resistance. And as soon as the – from that point on, his attitude towards any activity or any interaction I had with him, it changed. Our relationship changed.

Q. Right. Right. So you began feeling retaliatory treatment beginning 2017?

A. Yes.

Q. Okay. Because you sued the City of Jennings.

A. Yes.[5]

On March 27, 2024, the City filed a motion for summary judgment, alleging that Lehman's prior sworn admissions prove that his retaliation claim fell outside the one-year statute of limitations.[6] In addition to Lehman's testimony, the City pointed to an email[7] between Lehman and Mayor Henry Guinn ("Guinn") to show that Lehman's belief that he was facing retaliation due to a prior lawsuit stretched as early as 2017—three years before Lehman's lawsuit. On September 27, 2024, Lehman filed his opposition to the motion for summary judgment with his affidavit attached, signed and dated that same day by Lehman.[8] Lehman's affidavit clarified that it was only until May of 2020 that he believed he was facing retaliation because of his earlier lawsuit.[9]

On October 18, 2024, the City filed the pending Motion to Strike Lehman's affidavit.[10] Specifically, the City requests that the Court disregard the affidavit, either in whole or in part,

---

[4] [Doc. No. 44-3, p. 3; Deposition of Christopher Lehman at pp. 112].

[5] [Id.].

[6] [Doc. No. 44-2. p. 1]. The City also filed two supplemental memorandums in support of its motion for summary judgment. *See* [Doc. Nos. 50, 56].

[7] [Doc. No. 50-2, p.4].

[8] [Doc. Nos. 61, 61-4].

[9] [Doc. No. 61-4, ¶¶ 6, 15-18].

[10] [Doc. No. 63].

because it contradicts Lehman's prior admissions.[11] Lehman opposed the Motion on the basis that the affidavit only supplements and clarifies his earlier testimony.[12]

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.  Standard of Review

When ruling on a motion for summary judgment, a court may consider a party's affidavit even when it conflicts to some degree with other evidence. *See Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). However, the "sham-affidavit doctrine" is an exception to the general rule and prevents a party from escaping summary judgment through an affidavit "that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). Still, not every error in an affidavit justifies tossing it out, and the "bar for applying the doctrine is a high one, typically requiring affidavit testimony that is inherently inconsistent with prior testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (cleaned up). Thus, a court should not disregard an affidavit that "supplements rather than contradicts prior deposition testimony." *S.W.S. Erectors, Inc.*, 72 F.3d at 496.

Importantly, the inconsistent statement "must be with the *affiant's* own prior testimony, not the testimony of others." *Johnson v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 458 (5th Cir. 2024). The concern is straightforward. A nonmoving party should not "greatly diminish the utility of summary judgment as a procedure" and create an issue of fact simply by drafting a last-minute affidavit that contradicts *his own prior testimony*. *Seigler*, 30 F.4th at 477.

---

[11] [Id., p. 3]. Should the Court not strike the entire affidavit, Guinn, alternatively, seeks to only strike Paragraphs 6, 15-18, 24-26, 28-29, 34, and 35 of Lehman's affidavit.

[12] [Doc. No. 65, p. 1-2].

Here, the City points to several paragraphs of Lehman's affidavit that "squarely contradicts" his prior deposition testimony and email correspondence with Guinn. However, the City's Motion asks the Court to strike the *entire* affidavit. Therefore, the Court will first address whether it will strike the specific paragraphs before reviewing the remainder.

### B.  The Selected Paragraphs

The City takes issue with Paragraphs 6, 15-18, 24-26, 28-29, 34, and 35 of Lehman's affidavit.[13] Specifically, the City seeks to strike these statements because they contradict Lehman's sworn testimony and email correspondence with Guinn that he began feeling retaliatory treatment in 2017 because of a prior lawsuit.[14]

Lehman responds with two points. First, Lehman claims that the affidavit seeks to "clarify confusion attributed to imprecise deposition questioning."[15] The supposed confusion rose from the repeated use of the word "retaliation" during questioning, which, according to Lehman, requires "legal acumen to understand."[16] Next, Lehman's affidavit also sought to clarify that there were *two* separate and temporally distant claims of retaliation, and the line of questioning during the deposition conflated the two.[17] In other words, any prior statements where Lehman admits feeling retaliated against refers to the retaliation that spurned his *first* lawsuit—not this suit.

Put another way, Lehman claims that his affidavit merely "expands" upon his prior perspective, "which belongs solely to [him] and cannot be imputed by the mischaracterization of a third-party."[18]

---

[13] [Doc. No. 63-1, p. 3].
[14] [Id.].
[15] [Doc. No. 65, p. 1-2].
[16] [Id., p. 2].
[17] [Id.]. Lehman had a 2016 employment retaliation suit against the City of Jennings. In 2020, he brought this suit alleging first amendment retaliation following the settlement of his earlier case.
[18] [Doc. No. 65, p. 4].

However, Lehman's prior testimony speaks for itself. At the outset, it is not evident that Lehman fell victim to imprecise deposition questioning. Lehman's counsel objected to the repeated use of the word "retaliation" during his client's deposition because it asked a non-lawyer to make an inappropriate legal conclusion.[19] But that misses the point. A plaintiff does not need to have full knowledge of fault "in the legal sense" for the statute to begin to run, but he must have sufficient knowledge of facts that would eventually support a claim. *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983). Lehman's deposition questioning focused on determining the year he started feeling mistreated by Guinn. And Lehman's responses pointedly answered that inquiry.[20] In other words, regardless of how Lehman understood the word "retaliation," the questioning only sought to uncover the timeline of when he gathered the underlying facts that support his claim—a question that requires no legal acumen to answer.

Nor is it obvious that Lehman confused the two distinct claims of retaliation. When Lehman was asked whether he began feeling mistreated by Guinn in 2017, he responded in the affirmative.[21] Then, Lehman was asked whether that mistreatment was *because* of his first lawsuit.[22] Once more, Lehman responded in the affirmative. Again, Lehman's prior statement speaks for itself. The line of questioning and Lehman's subsequent answer indicated that the referenced retaliation was that *after* his first suit.

---

[19] [Id., p. 1-2]. Lehman dives into this argument in his Opposition to the City's Motion for Summary Judgment. [Doc. No. 61, p. 8].

[20] *See* [Doc. No. 44-3, p. 3; Deposition of Christopher Lehman at pp. 112]. "…as early as 2017, there's a resistance. And as soon as the – from that point on, his attitude towards any activity or any interaction I had with him, it changed. Our relationship changed."

[21] [Id.].

[22] [Id.].

Next, the Court will look at Lehman's affidavit. Paragraphs 6,[23] 15,[24] 16,[25] 17,[26] and 18[27] call into question Lehman's earlier testimony that he began feeling retaliatory treatment as early as 2017.[28] Lehman uses the affidavit to reiterate that it was only until May of 2020 that he gathered suspicion of retaliation.[29] However, that contradicts Lehman's earlier testimony that, as early as 2017, he faced retaliation and a downwards change of his relationship with Mayor Guinn because of his prior suit.[30] Thus, the statements derived from Lehman's prior testimony and his new affidavit as to *when* he became aware of his injury are irreconcilable.

---

[23] [Doc. No. 61-4, ¶ 6]. **Paragraph 6** states: "As set forth herein, and up until May 2020, I had no reason to believe that the current defendants, Henry Guinn, Kevin D. Millican, Steven VanHook, Bobby Vassuer, and the City of Jennings sought to retaliate against me for bringing my Employment Suit."

[24] [Id., ¶ 15]. **Paragraph 15** states: "Though I felt that the City's failure to act at that time seemed to be marked by an ulterior motive, I had no reason to suspect that it was in retaliation for bringing my Employment suit."

[25] [Id., ¶ 16]. **Paragraph 16** states: "In fact, up until Guinn's May 14, 2020 Email, I believed, that certain failures to respond to my reports of potential drug activity, including the instance outlined in the December 22, 2017 email, were possibly due to general, financially-motivated corruption in law enforcement which favored allowing the drug activity to continue without hindrance in certain areas."

[26] [Id., ¶ 17]. **Paragraph 17** states: "Because my exchanges with Guinn leading up to the May 14, 2020 Email reflected little to no hostility or negativity from Guinn, let alone on the basis of my Employment Suit, I had no reason to suspect prior misconduct or inaction on the part of the City was rooted in my Employment Suit until the date of the Email."

[27] [Id., ¶ 18]. **Paragraph 18** states: "On July 10, 2019, in response to my reports of suspicious activity and the prohibited disposal of waste products in my Neighborhood, Mayor Guinn copied me on email correspondence to Jennings Chief of Police, Danny Semmes, whereby Guinn directed Semmes to investigate my reports. Again, Guinn's response, which made no mention of my Employment Suit, presented no reason for me to believe that the Defendants' actions or repeated failures to act were in retaliation for filing my Employment Suit."

[28] [Doc. No. 44-3, p. 3; Deposition of Christopher Lehman at pp. 112].

[29] [Doc. No. 61-4, ¶¶ 6, 15-18].

[30] [Doc. No. 44-3, p. 3; Deposition of Christopher Lehman at pp. 112].

Paragraphs 24,[31] 25,[32] 26,[33] 28,[34] and 29[35] do Lehman no favors either. The paragraphs repeat that Lehman did not have any reason to believe that any agent of the City sought to retaliate against him because of his prior suit until May 14, 2020.[36] But 2017 is not 2020. Once more, the paragraphs are inherently inconsistent with Lehman's prior testimony.

Nor can Paragraphs 34[37] and 35[38] be spared. The two paragraphs only regurgitate that Lehman did not become aware of the retaliation until 2020, and that any earlier admission he made were regarding instances of retaliation *before* his prior suit.[39] Again, the statements plainly challenge Lehman's deposition in which he testified that he began to experience retaliation, as early as 2017, *because* of his prior suit.[40] Rather than supplementing or clarifying Lehman's prior statements, the above-mentioned paragraphs of the affidavit only impeaches, without explanation, his earlier testimony.

---

[31] [Id., ¶ 24]. **Paragraph 24** states: "At no point prior to May 14, 2020 did I observe or have reason to believe that any agent or representative of the City of Jennings sought to retaliate against me because I had previously sued and settled my Employment Suit against the City of Jennings."

[32] [Id., ¶ 25]. **Paragraph 25** states: "The May 14, 2020 Email was the first occasion I had reason to suspect that Defendant's failures to enforce the law and the Jennings Code in my Neighborhood, refusal to allow me to address the City Council, and other acts and omissions causing diminishment of my property value and other deprivations of rights were the product of retaliatory animus the Defendants harbored against me for bringing my Employment Suit."

[33] [Id., ¶ 26]. **Paragraph 26** states: "Though my Employment Suit settled in January 2019, I had no exchange with Defendants or third parties that I believe could have conveyed that any such discriminatory disposition was premised upon my Employment Suit until Guinn's May 14, 2020 Email."

[34] [Id., ¶ 28]. **Paragraph 28** states: "In responding to the question asked, my answer incorporated my retrospective perception of events leading up to and including my receipt of Guinn's May 14, 2020 Email. To clarify, *I did not understand the reason* for the resistance, change in Guinn's attitude, and the change in the tenor of our relationship prior to 2020."

[35] [Id., ¶ 29]. **Paragraph 29** states: "Additionally, I had no reason to suspect that the resistance and changes were in any way connected to my Employment Suit."

[36] [Id., ¶ 24, 25, 26, 28, 29].

[37] [Doc. No. 61-4, ¶ 34]. **Paragraph 34** states: "Accordingly, when Defendants counsel asked me about the first instance in which I noted that Guinn was acting in a "retaliatory" manner, I believed that the instances of "retaliation" I outlined were in response to my complaints about the lack of enforcement at 1915 Isabelle Street, as opposed to in response to the filing of my Employment Suit."

[38] [Id., ¶ 35]. **Paragraph 35** states: "As stated above, I did not perceive that the treatment could have plausibly been in retaliation for me filing the Employment Suit until receiving Guinn's May 14, 2020 Email."

[39] [Id., ¶¶ 34-35].

[40] [Doc. No. 44-3, p. 3; Deposition of Christopher Lehman at pp. 112].

Therefore, the City's Motion is **GRANTED** to the extent it seeks to strike from evidence Paragraphs 6, 15-18, 24-26, 28-29, 34, and 35 of Lehman's affidavit [Doc. No. 61-4].

### C.  The Remaining Parts of the Affidavit

However, the Court will not dispense the remaining portions of the affidavit. The remaining parts are not so inherently inconsistent with Lehman's prior testimony to warrant a wholesale strike. Discarding the entire affidavit requires a high hurdle—one of which has not been surpassed here. *See Seigler*, 30 F.4th at 477.

Therefore, the City's Motion is **DENIED** to the extent it seeks to strike from evidence any remaining portions of Lehman's affidavit [Doc. No. 61-4].

## III.    CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that the City's Motion to Strike [Doc. No. 63] is **GRANTED IN PART** and **DENIED PART**.

**IT IS FURTHER ORDERED** that to the extent the City seeks to strike from evidence Paragraphs 6, 15-18, 24-26, 28-29, 34 and 35 of Lehman's affidavit [Doc. No. 61-4], the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that to the extent the City seeks to strike from evidence any remaining paragraphs of Lehman's affidavit [Doc. No. 61-4], the Motion is **DENIED**.

MONROE, LOUISIANA, this 9th day of December, 2024.

Terry A. Doughty
United States District Judge