UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CHRISTOPHER LEHMAN**                                    **CASE NO. 2:20-CV-00736**

**VERSUS**                                                **JUDGE TERRY A. DOUGHTY**

**HENRY GUINN ET AL**                                     **MAGISTRATE JUDGE LEBLANC**

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 44] filed by Defendants, the City of Jennings, Louisiana, Henry Guinn, Kevin D. Millican, Steven VanHook, and Bobby Vasseur (collectively, "the City"). The City subsequently filed two supplemental memorandums in support of its Motion [Doc. Nos. 50, 56]. Plaintiff, Christopher Lehman filed an Opposition to the Motion [Doc. No. 61], and the City filed a Reply [Doc. No. 62].

For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I. **FACTS AND PROCEDURAL BACKGROUND**

This case involves a prior lawsuit, alleged retaliation, and a consequential deposition. On June 10, 2020, Christopher Lehman ("Lehman") brought this 42 U.S.C. §1983 action against the City, claiming First Amendment retaliation.[1] The retaliation allegedly sprung after Lehman filed an earlier lawsuit against the City on June 7, 2016.[2] Lehman claims that since bringing his prior lawsuit, the City has repeatedly retaliated against him by either (1) failing to enforce local ordinances in his neighborhood, (2) not addressing several complaints Lehman personally made

---

[1] [Doc. Nos. 1, 18]. This case initially involved several other claims beyond First Amendment retaliation. However, the Court dismissed all other claims. [Doc. Nos. 17, 27].
[2] [Doc. No. 18, p. 3].

to the City, and (3) directly harassing Lehman.[3] Lehman's prior lawsuit ultimately settled on January 9, 2019.[4] However, the alleged retaliation continued far after the settlement date as the City's supposed animosity against Lehman only intensified.[5] Thus, Lehman seeks relief for the all of the alleged retaliatory acts that occurred over the span of years since the first suit's filing.[6]

On January 10, 2024, Lehman testified in his deposition as to when the retaliation began.[7]

> A. – at that particular time, we're talking about 2016. You asked me to go back and explain to you when did I first noted that the mayor was being…[8]
> Q. Retaliatory?
> A. Retaliatory. So –
> ***
> A.  So as – in my mind, to answer your question –
> Q. Right.
> A. – and stuff, as early as 2017, there's a resistance. And as soon as the – from that point on, his attitude towards any activity or any interaction I had with him, it changed. Our relationship changed.[9]
> Q. Right. Right. So you began feeling retaliatory treatment beginning 2017?
> A. Yes.
> Q. Okay. Because you sued the City of Jennings.
> A. Yes.[10]

On March 27, 2024, the City filed the pending motion.[11] The City asserts that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law because Lehman's sworn admissions show that his First Amendment retaliation claim passed the statute of

---

[3] *See generally* [Doc. Nos. 18].
[4] [Doc. No. 61, p. 5].
[5] *See generally* [Doc. No. 18].
[6] [Id., p. 29-30].
[7] [Doc. No. 61-3, p. 1, 29].
[8] [Id., p. 29].
[9] Lehman is referring to Henry Guinn. Guinn was the Mayor of Jennings around 2017 and he is a codefendant in this suit.
[10] [Id.].
[11] [Doc. No. 44].

2

limitations.[12] Lehman disagrees and argues that there is a genuine issue of material fact regarding the timeliness of his claim.[13]

The issues have been briefed and the Court is prepared to rule.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Under FED. R. CIV. P. 56(a), the court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id*. at 247-48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate

---

[12] [Doc. No. 44-2, p. 1].
[13] [Doc. No. 61, p. 5]. After Lehman filed his Opposition, the City filed a motion to strike an affidavit attached to Lehman's filing. [Doc. No. 63]. The Court subsequently granted the motion to strike Lehman's affidavit from consideration in this ruling. [Doc. No. 67].

when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (cleaned up).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (cleaned up). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. First Amendment Retaliation and the Statute of Limitations

The First Amendment prohibits adverse and retaliatory government action against citizens for engaging in protected speech activities. *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must show that (1) they were engaged in a constitutionally protected activity, (2) the government's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing that activity, and (3) the government's adverse actions were substantially motivated against the plaintiff's exercise of the constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Filing a lawsuit against a local government is a First Amendment-protected activity. *See Wilson v. Thompson*, 593 F.3d 1375, 1387 (5th Cir. 1979). Next, the plaintiff must show a causal connection

between the government's retaliatory animus and the plaintiff's subsequent injury. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).[14]

However, a claim for First Amendment retaliation will not stay ripe forever. The statute of limitations for First Amendment retaliation claims under 42 U.S.C. §1983 is determined by state law. *See Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) (acknowledging that the state's statute of limitations "for general personal injury actions" are determinative.). In Louisiana, the statute of limitations for such actions is one year. *Jones v. Orleans Parish Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982); *see also* La. Civ. Code Ann. Art. 3492 (2020). Still, *federal law* determines when the statute of limitations begins to run. *Redburn*, 898 F.3d at 496. And the clock starts to tick when the plaintiff learns that they have suffered an injury or has "sufficient information" to become aware of the injury. *Id*.

The plaintiff must be aware of both (1) the existence of the injury and (2) the connection between the injury and the government's actions. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015). But actual knowledge is not required if the circumstances would lead a reasonable person to investigate further. *Id*. Nor does the plaintiff need to have full knowledge of fault "in the legal sense" for the statute of limitations to begin to run, but he must be aware of the facts that would support his claim. *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983).

### C.  The Continuing Violations Doctrine

When the statute of limitations of a claim runs out, the plaintiff is typically out of luck. However, under the continuing violations doctrine, a plaintiff may extend the period for an otherwise time-barred claim by showing that the violation manifested itself over time rather than

---

[14] Specifically, it must be a "but-for" cause, meaning that the government's action against the plaintiff would not have occurred absent the retaliatory motive. *Nieves*, 587 U.S. at 399.

in a series of discrete acts. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). In other words, the rule applies when the defendant's conduct becomes apparent only after the cumulation of a series of related events. *Id*. But this Court must invoke the doctrine sparingly. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). And a plaintiff cannot rely on the doctrine to resurrect claims that have concluded long ago, even if their effects persist. *McGregor v. Louisiana State Univ. Bd. Of Sup'rs*, 3 F.3d 850, 866 n. 27 (5th Cir. 1993).

In contrast, a discrete act is a fresh wrong, which triggers its own statutory time period. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 122. And "retaliation is, by definition, a discrete act, not a pattern of behavior." *Hamic v. Harris Cnty. W.C. & I.D. No. 36*, 184 F. App'x 442, 447 (5th Cir. 2006).[15] As a result, retaliatory acts are not actionable if time-barred, even when they relate to other timely-filed retaliatory acts. *Id*. at 447 (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113).[16]

Here, the continuing violation doctrine cannot apply. Since each instance of retaliation constitutes a discrete act, Lehman can only recover for those that are not time-barred. Still, the City seeks summary judgment as to *every* alleged retaliatory act on the basis that at least *some of them* might be time-barred.[17] That is unwarranted. Since each retaliatory act triggers its own statute of limitations, one untimely claim does not necessarily render all claims untimely. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 122. Thus, the Court will not discard all of Lehman's claims on the grounds that some of them may be time-barred. Instead, the Court must determine whether summary judgment is appropriate for each alleged retaliatory act.

---

[15] *See also O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006) ("First Amendment retaliation claims are always individually actionable, even when relatively minor.").

[16] The Fifth Circuit faced a similar question in *Stringer v. Town of Jonesboro*, 986 F.3d 502 (2021). The plaintiff's sole argument on appeal was that the district court erred by not analyzing each instance of retaliation as a discrete act, subject to its own one-year period. However, the Fifth Circuit affirmed the district court's ruling since the plaintiff failed to allege *any* retaliatory acts that occurred within the one-year period of her filing. *Id*. at 512.

[17] [Doc. No. 44-2, p. 7].

### 1. The 2016 Incidents

Lehman brought his prior suit against the City in June of 2016,[18] and the City has allegedly retaliated against him ever since.[19] The City seeks summary judgment because Lehman brought this suit in 2020 but admitted to having knowledge of the retaliation as early as 2017.[20] However, any evidence pinpointing when Lehman had sufficient knowledge about any alleged 2016 retaliatory acts is scant. For instance, the City relies on Lehman's 2024 admission that he began feeling retaliatory treatment from Henry Guinn in 2017.[21] Lehman conceded that "as early as 2017, there's a resistance. And … *from that point on*, his attitude towards any activity or any interaction I had with him, it changed. Our relationship changed."[22] At best, the statement only proves that Lehman began sensing retaliation in 2017 for incidents that occurred that year and possibly beyond. But several months passed between Lehman's June 2016 filing and 2017.

In fact, when repeatedly asked during the deposition whether, at any point in 2016, Lehman felt that the City retaliated against him because of his prior suit, his answer sprung to acts in 2017.[23] Although Lehman's deposition statement concedes knowledge of *some* retaliation, it must not be stretched beyond its natural boundaries. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991) ("Any reservations the court has concerning evidence will preclude summary judgment.").[24] Consequently, a genuine issue of material fact remains as to the timing of Lehman's knowledge regarding any of the allegedly retaliatory acts that occurred in 2016.

---

[18] [Doc. No. 18, p. 3].
[19] [Id., p. 29].
[20] [Doc. No. 44-2, p. 3-4].
[21] [Id.]; [Doc. No. 61-3, p. 1, 29].
[22] [Doc. No. 61-3, p. 29].
[23] [Id.].
[24] Additionally, the City points to a 2017 email where Lehman stated that "we filed our Discrimination/Retaliation Suit June 7, 2016, so no one seem to want to talk or cooperate at that point on." *See* [Doc. No. 50-2, p. 4]. However, it is not necessarily clear whether Lehman's email is referring to (1) the City failing to talk and cooperate as it pertains to the prior lawsuit itself or (2) the City retaliating against Lehman by refusing to address Lehman's grievances. Again, any reservations held by the Court must favor the nonmovant. *Int'l Shortstop, Inc.*, 939 F.2d at 1264.

Therefore, the City's Motion is **DENIED** to the extent it seeks to dismiss any First Amendment retaliation claims arising from acts occurring in 2016 because of Lehman's prior lawsuit.

### 2. The 2017 Incidents

The same cannot be said for 2017. Several developments occurred that year that allegedly enflamed the City's animus against Lehman. For instance, Mayor Guinn was elected to office in 2017,[25] and it was around that time that Lehman told Guinn that he had no intention of dropping his prior lawsuit against the City.[26]

However, what is relevant is not the *what* but the *when*. Regardless of *what* happened in 2017, Lehman's deposition admissions about *when* he learned about it is fatal. Lehman flatly admitted to feeling retaliation at the beginning and throughout 2017.[27] Then, by December 2017, he shared his concern about the retaliation he faced "over a long period of time" with federal authorities.[28] In other words, Lehman's own words illustrate that he knew of the retaliation from the start to the tail-end of 2017.[29] Nor does Lehman offer any evidence to refute or narrow his statement.[30] Since Lehman admitted to having the knowledge of retaliation throughout 2017, the one-year statute of limitations for those claims began that same year. *See Redburn*, 898 F.3d at

---

[25] [Id., p. 28].
[26] [Id., p. 29].
[27] [Id., p. 30].
[28] [Id., p. 124].
[29] Additionally, Lehman argues that the statute of limitations for any of the 2017 acts should be "tolled." *See* [Doc. No. 61, 9-11]. In other words, the statute of limitation does not run when the defendant "controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation." *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995). But Lehman plainly admitted to knowing that he was being retaliated against that year. Therefore, this is no dispute as to whether Lehman had knowledge of the facts that form the basis of his claims as to 2017.
[30] Following the City's Motion for Summary Judgment [Doc. No. 44], Lehman filed an affidavit attached to his Opposition [Doc. No. 61-4]. In large part, the affidavit sought to supplement or clarify Lehman's prior deposition admissions. However, the Court granted the City's motion to strike portions of the affidavit from consideration after finding that the portions were inherently inconsistent with Lehman's prior sworn testimony. [Doc. No. 67].

496; *King-White*, 803 F.3d at 762. But Lehman brought this suit in 2020—three years later and two years too late.

Therefore, the City's Motion is **GRANTED** to the extent it seeks to dismiss any First Amendment retaliation claims arising from acts occurring in 2017.

### 3. The 2018 Incidents

Arguably, things changed the following year—for better or worse. For instance, criminal drug activity seemingly increased in Lehman's neighborhood in 2018.[31] At the same time, Lehman's prior suit against the City concluded with a settlement shortly after the end of the year. Still, the City claims that *all* of Lehman's retaliation claims, including any that sprung in 2018, are time-barred because of his previous concession regarding 2017.[32]

However, Lehman's prior admission can only go so far. Again, retaliation is a discrete act. *Hamic*, 184 F. App'x at 447. And First Amendment retaliation claims are always *individually* actionable. *O'Connor*, 440 F.3d at 127-28. In other words, Lehman's 2018 claims may survive summary judgment even if prior or subsequent claims are time-barred. Just because Lehman admitted to knowing that he was a victim of retaliation in 2017 does not necessarily mean the same for 2018. Lehman's own testimony illustrates that.

Lehman's deposition delves into the criminal activity that plagued his neighborhood, his repeated requests to the City to address the problem, and the City's alleged failure to do so.[33] Lehman claimed that he reported nearby criminal activity to the local police on multiple occasions only so they could sit back, twiddle their thumbs, and provide little help.[34] But Lehman did not tie the police's alleged lacking response to retaliation for his prior suit. Instead, he pointed to

---

[31] [Doc. No. 61-17, p. 2].
[32] [Doc. No. 44-2].
[33] [Doc. No. 61-3, p. 37-38].
[34] [Id.].

9

corruption. For example, Lehman described the culprit as someone "benefitting from the drug activity on my street" and "involved in it because they're actually making money."[35] In essence, Lehman arguably believed that some of the City's actions throughout 2018 were due to corruption and financial gain—not out of retaliation for Lehman's prior suit.

Again, the plaintiff, or at least a reasonable person, must be aware of the injury and the connection between the injury and the government's actions. *King-White*, 803 F.3d at 762. However, Lehman's testimony shows no such awareness.[36] Instead, his deposition shows that Lehman may not have had the necessary awareness to trigger the statute of limitations for any of the alleged retaliatory acts throughout 2018. Rather than a clear admission showing the required knowledge of retaliation, Lehman's testimony establishes a genuine issue of material fact—and grounds to preclude summary judgment.

Therefore, the City's Motion is **DENIED** to the extent it seeks to dismiss any First Amendment retaliation claims arising from acts occurring in 2018.

### 4. The 2019 Incidents and Beyond

However, Lehman's prior admissions betray him again as to 2019—at least partly. First, Lehman admitted that criminal activity started to rise in his neighborhood in early 2019.[37] And after reporting his concern to Mayor Guinn, Lehman admitted that he received "immediate sarcasm" and condescension in return.[38] Next, Lehman admitted that the "atmosphere was changing" in 2019 and the retaliation increased around that time when the prior lawsuit settled.[39]

---

[35] [Id., p. 38].
[36] Even the City's attorney seemed reasonably confused by Lehman's deposition answer. When Lehman stated his belief that someone was benefitting from the criminal activity in his neighborhood, the attorney replied: "Okay. And what's why you kind of lose me… Because, number one, you got retaliation… [or number two] I'm going to protect my financial interest by doctoring what I can doctor to make it look like there's no drug activity… I mean is that what you think was happening?" *Id*.
[37] [Id., p. 27].
[38] [Id.].
[39] [Id., p. 30].

10

More specifically, Lehman admitted that "everything takes a whole different shape and form after the first lawsuit is over with."[40] And Lehman pointed to March of that year as the time that he knew "things were going downhill."[41] Again, Lehman did not need to have full knowledge of fault "in the legal sense" for the statute of limitations to begin to run, but his admissions show that he had enough knowledge of the facts that would support his claim. *See Harrison*, 708 F.2d at 1027. And once more, Lehman offered no evidence to refute or narrow his admissions as to his knowledge throughout that year. Thus, there is no dispute as to whether Lehman had the required knowledge to trigger the statute of limitations for any retaliatory act that occurred in early 2019.

However, the Court will not dispense with the remaining subsequent claims. The City's Motion sought summary judgment only on the basis that Lehman's claims were time-barred.[42] But since each retaliatory act triggers its own statute of limitations, one untimely claim does not necessarily render all claims untimely. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 122. Lehman brought this suit on June 10, 2020.[43] Thus, any claims arising from retaliatory conduct that occurred on or after June 10, 2019, are not time-barred. *See Jones*, 688 F.2d at 344. And those remaining claims carry genuine factual determinations left for the jury to untangle—and the jury alone.

Therefore, the City's Motion is **GRANTED** to the extent it seeks to dismiss any First Amendment retaliation claims arising from acts occurring between January 1, 2019 and June 9, 2019. However, the City's Motion is **DENIED** to the extent it seeks to dismiss any First Amendment retaliation claims arising from acts occurring on or after June 10, 2019.

---

[40] [Id.].
[41] [Id., p. 27].
[42] [Doc. No. 44-2, p. 7].
[43] [Doc. No. 1].

### III.   CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the City's Motion for Summary Judgment [Doc. No. 44] is **GRANTED** as to any First Amendment retaliation claims arising from acts occurring in 2017 and acts occurring between January 1, 2019 and June 9, 2019. The City's Motion is **DENIED** to the extent it seeks to dismiss any remaining First Amendment retaliation claims.

MONROE, LOUISIANA, this 13th day of January, 2025.

_____
Terry A. Doughty
United States District Judge